## UNITED STATES *v.* RAMSAY.

### APPEAL FROM THE COURT OF CLAIMS.

Submitted December 20, 1886. — Decided January 17, 1887.

On the 29th April, 1871, A gave notice to a collector of internal revenue of frauds upon the revenue by a railroad company, whereby it had become liable to penalties. In consequence of this information an action was commenced for the recovery of the penalties, which resulted in a compromise in June, 1874, and the payment of a sum by the company in discharge of its liability. A applied for the informer's share of this sum under the provisions of § 179, act of June 30, 1864, 13 Stat. 305, as amended by the act of July 13, 1866, 14 Stat. 145. It was conceded that A was the informer as claimed, and that he was entitled to the amount claimed, if the duty and power to make the payment were not taken away by § 39 of the act of June 6, 1872, 17 Stat. 256, repealing those previous provisions. Payment was refused at the treasury, whereupon claimant brought suit in the Court of Claims, and obtained judgment for the recovery of his claim. On appeal this court affirms that judgment by a divided court.

SECTION 179 of the act of June 30, 1864, 13 Stat. 305, as amended by the act of July 13, 1866, 14 Stat. 145, was as

follows: "That, where it is not otherwise provided for, it shall be the duty of the collectors, in their respective districts, and they are hereby authorized, to prosecute for the recovery of any sum or sums that may be forfeited; and all fines, penalties, and forfeitures which may be imposed or incurred shall and may be sued for and recovered, where not otherwise provided, in the name of the United States, in any proper form of action, or by any appropriate form of proceeding, before any circuit or district court of the United States for the district within which said fine, penalty, or forfeiture may have been incurred, or before any court of competent jurisdiction. And where not otherwise provided for, such share as the Secretary of the Treasury shall, by general regulations, provide, not exceeding one moiety, nor more than five thousand dollars in any one case, shall be to the use of the person, to be ascertained by the court which shall have imposed or decreed any such fine, penalty, or forfeiture, who shall first inform of the cause, matter, or thing whereby such fine, penalty, or forfeiture shall have been incurred; and when any sum is paid without suit, or before judgment, in lieu of fine, [penalty,] or forfeiture, and a share of the same is claimed by any person as informer, the Secretary of the Treasury, under general regulations to be by him prescribed, shall determine whether any claimant is entitled to such share as above limited, and to whom the same shall be paid, and shall make payment accordingly. It is hereby declared to be the true intent and meaning of the present and all previous provisions of internal revenue acts granting shares to informers, that no right accrues to or is vested in any informer in any case until the fine, penalty, or forfeiture in such case is fixed by judgment or compromise, and the amount or proceeds shall have been paid, when the informer shall become entitled to his legal share of the sum adjudged or agreed upon and received: *Provided*, That nothing herein contained shall be construed to limit or affect the power of remitting the whole or any portion of a fine, penalty, or forfeiture conferred on the Secretary of the Treasury by existing laws."

The Secretary of the Treasury, after the passage of the

above act, issued a circular fixing the amount of informers' shares, one of which was forwarded to the deceased husband of the claimant Ramsay at his request.

Section 39 of the act of June 6, 1872, which took effect August 1, 1872, was as follows:

"That so much of section one hundred and seventy-nine of the act of July thirteenth, eighteen hundred and sixty-six, as provides for moieties to informers be, and the same is hereby, repealed; and the commissioner of internal revenue, with the approval of the Secretary of the Treasury, is hereby authorized to pay such sums, not exceeding in the aggregate the amount appropriated therefor, as may in his judgment be necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided for by law; and for this purpose there is hereby appropriated one hundred thousand dollars, or so much thereof as may be necessary, out of any money in the treasury not otherwise appropriated."

Section 46 of the same act of June 6, 1872, 17 Stat. 258 was as follows: "Sec. 46. That all acts and parts of acts inconsistent with the provisions of this act are hereby repealed: Provided, That all the provisions of said act shall be in force for levying and collecting all taxes properly assessed, or liable to be assessed, or accruing under the provisions of former acts, the right to which has already accrued, or which may hereafter accrue, under said acts, and for maintaining, continuing, and enforcing liens, fines, penalties, and forfeitures incurred under and by virtue thereof. And this act shall not be construed to affect any act done, right accrued, or penalty incurred under former acts, but every such right is hereby saved, and all suits and prosecutions for acts already done in violation of any former act or acts of Congress relating to the subjects embraced in this act may be commenced or proceeded with in like manner as if this act had not been passed."

The allegations in the claimants' petition were as follows: "The claimant Sarah E. Ramsay is the widow in community of G. Alexander Ramsay, late of the parish of Orleans, in the

state of Louisiana, deceased, and the claimant Anna E. Wagner is the daughter and sole heir of said G. Alexander Ramsay, and these claimants have been recognized as such widow and heir by the civil district court for the said parish of Orleans, and have been put in possession by said court, of all the property, real, personal, and mixed, of said Ramsay, together with all his rights of action, including particularly this claim, and are the legal representatives of said G. Alexander Ramsay in his personal estate. . . ."

"Said G. Alexander Ramsay, on the 29th day of April, in the year 1871, being cognizant of the fact that the Houston and Texas Central Railway Company, a corporation of the state of Texas, had committed frauds upon the internal revenue of the United States, and was indebted to the United States in a large amount for back taxes, and that by its said frauds and non-payment of taxes it had become liable to heavy penalties, to wit, in the sum of forty thousand dollars, and having, upon inquiry made by him, been furnished by the commissioner of internal revenue with a circular issued by the Secretary of the Treasury, prescribing the rewards to be paid to informers who should give information in regard to cases of that character, did inform the said commissioner of internal revenue of the frauds and delinquencies aforesaid; and thereupon the attorney of the United States for the eastern district of Texas brought suits in the name of the United States, in the district court of the United States for said district, against the said Houston and Texas Central Railway Company for forty penalties of one thousand dollars each, which said suits were compromised in June, 1874, before judgment, by the payment by said railroad company to the United States of fifteen thousand six hundred and ninety-four dollars and three cents, which sum was divided or distributed into the following items: Five thousand dollars as or in lieu of penalties; five thousand five hundred and twenty-one dollars and eighty-seven cents for tax unpaid; one thousand eight hundred and thirty-four dollars and ninety-five cents for interest thereon, and three thousand three hundred and thirty-seven dollars and twenty-one cents for costs of court.

"Thereafter, in 1875 and 1876, the said G. Alexander Ramsay made application to the Secretary of the Treasury for a share of said sum so received in compromise, but no decision was made by the said Secretary of the Treasury on his said application, and the said application remained pending in the said Treasury Department before the said Secretary until the year 1885, when said Ramsay applied to the Secretary of the Treasury to take up said claim to ascertain as required by law whether the said Ramsay was or was not the informer, to determine the share falling due to him as such under the terms of the aforesaid circular, and having determined these questions, either to order the claim paid or to refer the claim, under § 1063 of the Revised Statutes of the United States, to this court for adjudication. Said Secretary having been thus requested to decide this question, did, on the sixth day of November, in the year 1885, adjudicate and decide that the said Ramsay was the first informer against the aforesaid railway company; that the information given by him led to the recovery from said company of penalties amounting to five thousand dollars; and that the informer's share of that amount was one thousand seven hundred dollars. Said Secretary, however, while making the said award, declared that he preferred not to order the payment of the said amount without a judicial construction from this court of the question whether the 179th section of the act of June 30th, 1864, as amended by the act of July 13th, 1866, was or was not repealed by the 39th section of the act of June 6th, 1872, as to cases in which information had been given prior to the passage of the last-named act. But the said Secretary made his decision as aforesaid, upon the question of fact as to the proper informer with the avowed object and purpose of obtaining from this court a judicial construction of the said 39th section of the act of June 6th, 1872, which construction as applied to the present case this petition is now filed to obtain. The claimants therefore claim, under and by virtue of the said decision and award made by the Secretary of the Treasury, which decision is annexed to this petition and made a part thereof, one thousand seven hundred dollars. In case, how-

ever, this honorable court shall decide that these claimants are not limited in the amount by the terms of the award of the said Secretary of the Treasury, then these claimants claim that the amount of the said G. Alexander Ramsay's share should be computed upon the entire amount obtained by the United States from said railway company, and the claimants aver that the amount prescribed by the original circular of August 14th, 1866, was the sum of two thousand eight hundred and fifty dollars on the first twelve thousand dollars, and five per cent. on all over twelve thousand dollars, making the share of said Ramsay on the said fifteen thousand six hundred and ninety-four dollars and three cents, the sum of three thousand and thirty-four dollars and seventy cents, which amount they claim.

"The said G. Alexander Ramsay, in his lifetime, after failing to obtain satisfactory action from the Treasury Department, did, on the third day of September, 1877, file a claim in this honorable court to recover the amount of his share as informer, which claim, for the reason that the Secretary of the Treasury had not yet ascertained and decided that said Ramsay was the informer in the case, or whether there was any informer, was by this honorable court on the 5th day of May, 1879, dismissed for want of jurisdiction. A bill for the relief of the said Ramsay has been several times presented in Congress, but no action taken thereon until the first session of the 48th Congress, when the same was referred to this honorable court, under the act of March 3d, 1883, for a finding of facts, and a finding of facts was on the 15th day of May, 1884, made by this court and reported to Congress, and thereafter, on the 5th day of July, 1884, a favorable report was made on his claim by the Committee on Claims of the House of Representatives, but was not acted upon by the said House.

"No other action than as aforesaid has been had on this claim in Congress or by any of the departments.

"The claimants are the sole owners of this claim, and the only persons interested therein; and no assignment or transfer of this claim, or of any part thereof or interest therein, has been made.

"The claimants are justly entitled to the amount herein claimed from the United States, after allowing all just credits and off-sets. The claimants are, and said G. Alexander Ramsay was, citizens of the United States, and have at all times borne true allegiance to the Government thereof, and have not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said Government; and the claimants believe the facts as stated in this petition to be true. And the claimants demand judgment for three thousand and thirty-four dollars and seventy cents ($3034.70)."

The "decision and award of the Secretary" of the Treasury annexed to the claimant's petition was as follows:"

"TREASURY DEPARTMENT,
"OFFICE OF THE SECRETARY,
"Washington, D. C., November 6, 1885.

"GEORGE A. KING, Esqr.,
"Attorney for G. Alexander Ramsay,
"1420 New York Avenue, Washington, D.C.:

"SIR: In your letter of the 31st ultimo, in behalf of your client, G. Alexander Ramsay, you state that all you ask is 'that you, Mr. Secretary, will adjudicate and decide upon the evidence before you a plain, simple question of fact, never before considered or decided in any manner by yourself or any of your predecessors, or any of your or their assistants, namely, whether Mr. Ramsay was, or was not, the first informer whereby the sum of $5000.00 penalties, and $10,694.03 tax, interest, and costs, were recovered from the Houston and Texas Central Railway Company, for frauds upon the revenue; and that having decided this question, you will refer the case to the Court of Claims, under § 1063 of the Revised Statutes, for trial and adjudication.'

"In reply, I have to say that the claim of your client referred to, although presented to the Secretary of the Treasury in the year 1875, as shown by the records of this office, has never been formally rejected by any Secretary of the Treasury.

"The records show also that no Secretary of the Treasury has ever ascertained and determined whether there was any

informer in the case referred to, nor has it ever been determined and declared formally by any Secretary whether your client, Mr. Ramsay, was or was not the first informer in this case.

" All that is shown by the records of this office on this point is that Mr. Ramsay was notified by the Commissioner of Internal Revenue that he was not entitled to the share for which he made application, because the act of June 6, 1872, repealing informers' shares, went into effect before the case in which he claimed the share had been compromised, and that the claim was merely marked ' too late,' that no finding or award was made, and that no letter of rejection was written by the Secretary to the claimant.

" In this state of the case I see no objection to complying with your request, so far as to state that it clearly appears from the evidence on file in this case that your client, George Alexander Ramsay, was the first informer against the Houston and Texas Central Railway Company, and that the information given by him led to the recovery from said company of penalties amounting to $5000.00.

" The informer's share of that amount would have been $1700.00, under the schedule of shares prescribed by the Secretary of the Treasury in a circular issued by him, August 14, 1866, pursuant to the authority conferred by § 179 of the act of June 30, 1864, 13 Stat. 305, as amended by the act of July 13, 1866, 14 Stat. 145. This amount was not paid, because said § 179 was repealed by § 39 of the act of June 6, 1872, 17 Stat. 256, which took effect August 1, 1872, § 47, and the Department held, under the wording of said § 179, viz. : 'That no right accrues to or is invested in any informer in any case until the fine, penalty, or forfeiture in such case is fixed by judgment or compromise, and the amount or proceeds shall have been paid,' that unless the amount of the fine, penalty, or forfeiture had been both fixed and paid to the Government prior to August 1, 1872, no share of the same could be paid to the informer, and that as the case in question was not compromised until in 1874, Mr. Ramsay was not entitled to receive the allotted share.

"That the present Secretary is not bound to accept and act upon this construction of the law is made plain by the decision of the Supreme Court of the United States in the case of the *United States* v. *MacDaniel*, 7 Pet. 1, wherein it is said: 'It will not be contended that one Secretary has not the same power as another to give a construction to an act which relates to the business of his Department.'

"Nevertheless, as the construction referred to has been applied, as I am informed, to a large number of cases, and has been acquiesced in from 1875 to the present time, I prefer not to set it aside without the authority of a judicial construction, and therefore I decline to award or order the payment of the share claimed by Mr. Ramsay in this case.

"It is presumed that upon this official action your client will now be in a condition to prosecute his claim in the Court of Claims, and that that court will have full jurisdiction of the case.       "Very respectfully,

"D. MANNING,

"*Secretary.*"

The defendants to this petition filed a general demurrer as follows:

"And now come the said defendants, by their Attorney General, and demurring to the petition in this cause, state as the ground thereof that the petition does not allege facts sufficient to constitute a cause of action.

"ROBERT A. HOWARD,

"*Assistant Attorney General.*"

The Courts of Claims rendered judgment for the whole amount of the claim, from which the United States took this appeal.

*Mr. Attorney General* and *Mr. F. P. Dewees* for appellant.

*Mr. George A. King* and *Mr. William W. Hundlin* for appellees.

Mr. CHIEF JUSTICE WAITE announced that the judgment of the Court of Claims was

*Affirmed by a Divided Court.*